**KOLLER LAW LLC**
David M. Koller, Esq. (PA 90119)
Jordan D. Santo, Esq. (PA 320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTHONY WHEELER,** | : | **Civil Action No. 25-2860** |
| **102 Bassatt Drive** | : | |
| **Downingtown, PA 19335** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **WIDENER UNIVERSITY,** | : | |
| **One University Place** | : | |
| **Chester, PA 19013** | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Anthony Wheeler (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Widener University (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), as amended, the Pennsylvania Human Relations Act ("PHRA"), Title IX and the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

### <u>THE PARTIES</u>

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Widener University is a Higher Education Institution which receives federal funding and is required to abide by Federal anti-discrimination laws with a location and headquarters located at One University Place, Chester, PA 19013.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employes 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweeks in the current or preceding year.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus

satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted his administrative remedies under Title VII, the ADA and the PHRA.

15. On or about May 13, 2025, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race, sex and disability discrimination and retaliation against Defendant.

16. The Charge was assigned Charge Numbers of 530-2025-06065 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated May 16, 2025. Plaintiff received the notice by electronic

mail.

18. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

20. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## **MATERIAL FACTS**

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. Plaintiff is a Caucasian male.

23. On or about July 1, 2020, Defendant appointed Plaintiff as the Dean of its School of Business Administration ("SBA").

24. Plaintiff maintained stellar work performance in his role as Dean with a well-documented history of success.

25. In or around March 2023, Plaintiff was involved in investigations relating to M.S., Associate Professor of Accounting and one of Plaintiff's subordinates.

26. The investigations investigated inappropriate comments M.S. made during meetings and his poor treatment of women.

27. Plaintiff and M.S. had two developmental non-disciplinary counselling sessions based on his behavior.

28. Erica Holmes, a member of Defendant's Employee Relations team in the office of Human Resources was present at each of these meetings.

29. Thereafter, M.S. made Equal Employment Opportunity ("EEO") complaints against Plaintiff and other employees at Defendant, to include Andrew Workman, Defendant's Provost, alleging discrimination based on race.

30. M.S. made approximately 14-15 EEO claims in total and filed at least two of said claims with the Pennsylvania Human Relations Commission ("PHRC").

31. On or about September 25, 2023, Keesha Chavis, AVP Human Resources, emailed Plaintiff informing him that the PHRC found "no probable cause" regarding M.S.'s first claim filed with the PHRC.

32. On or about November 7, 2023, Plaintiff filed a Title IX Complaint regarding M.S.'s treatment of two female professors under his supervision.

33. This complaint was filed with Kiara Allison, Defendant's Director of Title IX Compliance, with a copy to Chavis.

34. Plaintiff detailed M.S.'s pattern of behavior towards several female faculty and staff members and M.S.'s creation of an untenable environment for two specific female full-time instructors at the SBA.

35. Plaintiff originally delayed filing his Title IX Complaint regarding M.S. at the request of the two professors whom M.S. harassed.

36. Eventually, though, as a supervisor, Plaintiff felt compelled to file a complaint because M.S.'s treatment of one of the individuals left her in tears.

37. This individual told Plaintiff she no longer enjoyed coming to work and had anxiety about coming to work based on how M.S. treated her and how he was actively working to undermine her and seemed to be trying to have her removed from her position.

38. Defendant, via Allison, told Plaintiff its policies prohibited investigation of Plaintiff's complaint because the individuals who were harassed "refused to put their names on the complaint to move it forward" or words to that effect.

39. On or about February 23, 2024, Donna McCloskey, Associate Dean, emailed Plaintiff to inform him M.S. filed a new set of claims against her for summer teaching.

40. M.S.'s claims started an 18-month long investigation conducted by a third party.

41. During the investigation as an interim measure, M.S. reported to Todd Clark, Dean of Defendant's Delaware Law School, instead of Plaintiff.

42. On or about February 28, 2024, Plaintiff met with Workman to discuss this ongoing situation.

43. At this meeting, Workman began attempts to coerce Plaintiff to squash complaints by others against M.S.

44. Workman told Plaintiff that too many faculty from the SBA were going to Human Resources, or words to that effect, and he blamed Plaintiff for this.

45. Workman said Plaintiff's faculty were "too rankled" or words to that effect.

46. Plaintiff immediately reached out to Allison about Workman's threats and expressing that as part of the review process, he had anti-retaliation protections based on his participation in Title IX investigations and that he believed Workman's comments were threats related to the applicable Title IX investigations.

47. On or about March 3, 2024, Plaintiff sent Workman a SBA Plan of Improvement to address Workman's alleged concerns.

48. On or about March 8, 2024, Allison emailed Plaintiff to inform him that a decision maker for M.S.'s EHON investigation had been assigned for hearing.

49. On or about March 27, 2024, Allison again emailed Plaintiff informing him that the investigative report for the hearing into the claims would be in by May 7, 2024.

50. On or about May 21, 2024 through May 23, 2024, Defendant held the hearing regarding I.S.'s claims.

51. On or about June 3, 2024, Kathleen O'Connell-Bell, Defendant's Legal Counsel, emailed Plaintiff notifying him that M.S. filed another PHRC Claim alleging retaliation; specifically, that the investigation into his complaints and the summer teaching schedule were retaliatory acts.

52. On or about June 11, 2024, Allison notified Plaintiff via email of the "Notice of Outcome" of M.S.'s claims.

53. The Notice of Outcome stated, "*No claims met the preponderance of evidence. All respondents cleared*."

54. Throughout June through August 2024, Plaintiff met with Workman several times to discuss this matter.

55. In a meeting on or about July 16, 2024, the two discussed potential EEO claims that Samantha Kranyak, Instructor of Accounting, and Stephanie Wendling, Instructor of Tax and Financial Planning, could file based on final investigation report and conclusion for M.S.'s false claims.

56. On or about August 13, 2024, Plaintiff met with Workman and Human Resources.

57. During the meeting, they reviewed M.S.'s case.

58. Plaintiff requested to Human Resources that M.S. be removed from the building as an intermediate measure, as he was set to return to work; Human Resources denied Plaintiff's Request.

59. Plaintiff told Workman that Kranyak and Wendling would be upset by M.S. being permitted to return to work and would file claims against M.S.

60. Workman said "we'll see if they do" or words to that effect.

61. Defendant did not terminate M.S.'s employment.

62. On or about October 15, 2024, Allison told Plaintiff via email that M.S. would be returning to work and would report directly to Plaintiff.

63. On or about October 23, 2024, Plaintiff met with Workman to discuss creating a "restorative culture" upon M.S.'s return, including bringing in a formal mediator for a mediation session with M.S. and others involved in the investigation.

64. On or about November 5, 2024, M.S. emailed Plaintiff and included Allison, Workman, Stacey Robertson, President, Michelle Meekins-Davis, Chief Diversity Officer, and Mark Nicosia, Associate Vice Provost.

65. M.S. threatened another lawsuit, renewed his previously investigated and dismissed claims and asserted that "I am unsure why it has never been considered that I may not be the problem" or words to that effect in his email.

66. M.S. implied that Plaintiff, not M.S., was the issue at the SBA.

67. Shortly thereafter, Barbara Basel, Interim Vice President of Human Resources, sent an email about Defendant contracting with Dr. DA Graham to mediate the conflicts between M.S. and multiple SBA faculty members.

68. Plaintiff met with Basel on or about November 6, 2024.

69. Plaintiff expressed concerns about M.S.'s latest email; specifically Plaintiff believed it violated M.S.'s Performance Improvement Plan ("PIP").

70. Basel told Plaintiff he would have to schedule a performance management feedback session with M.S.

71. Plaintiff declined to do this due to his past negative interactions with M.S., including M.S.'s unfounded claims against Plaintiff.

72. Plaintiff requested Human Resources handle the communication plan violation because of this.

73. Basel refused.

74. Also during this meeting, Plaintiff expressed to Basel concern the mediation process would be used to pressure people into not pursuing their own legitimate complaints regarding M.S.

75. Later that day, Plaintiff emailed Allison and requested that M.S. be moved back to Clark's supervision at Defendant's Delaware Law School.

76. That same day, Workman emailed Plaintiff his performance review.

77. Workman wrote the following on Plaintiff's review: "As you know, I am particularly concerned about the morale issues you have encountered in the school.  I realize that the clauses are complicated and somewhat out of your control.  At the same time, I need to see a way forward for the school, and your role as Dean requires that you provide leadership to move beyond the past.  As you know the university has engaged a mediator to address the issue.  I encourage you to help make this process a success."

78. On or about November 20, 2024, Plaintiff met with DA Graham for a mediation session.

79. Graham stated he would provide a report to the university about his efforts to find a mediated solution by the middle of January.

80. The next day, Plaintiff met with Workman.

81. Plaintiff informed Workman that he met with DA Graham.

82. As the two go up to leave to go to Executive Leadership Team Meeting in Defendant's boardroom, Plaintiff expressed that he believed DA Graham was really good.

83. Workman responded "Good. We can't afford another investigation" or words to that effect.

84. On or about December 3, 2024, Basel emailed faculty about sending a second round of invites to faculty who did not respond to mediation outreach.

85. Later that day, M.S. emailed Plaintiff requesting a one-on-one meeting with him.

86. On or about December 5, 2024, Basel, Allison, and Tachhino met with Plaintiff about M.S. emailing people across campus to help stop claims counter-filed against him.

87. After Tachhino left the meeting, Plaintiff expressed his concerns about M.S.'s actions and his disinterest in meeting with M.S.

88. Plaintiff referenced Workman's performance evaluation and Workman's statement about not being able to "afford another investigation."

89. Basel told Plaintiff that she had not heard any conversation from the President or Provost about pushing people to mediate.

90. Plaintiff referenced Basel's December 3, 2024 email and how it might be received or might appear to faculty as pressuring mediation.

91. Plaintiff reiterated that if he heard of any pressure applied to anyone that he would feel compelled to go outside of Defendant to find a solution.

92. Basel responded that Plaintiff needed to manage M.S. or words to that effect.

93. Plaintiff met with DA Graham later that day for a mediation session to discuss his concerns about meeting with M.S.

94. Plaintiff told DA Graham of the pressure he was feeling to force a mediated solution and that Workman previously threatened Plaintiff's job.

95. DA Graham implored Plaintiff to be part of M.S.'s therapeutic process.

96. That night, Plaintiff emailed M.S. declining to meet one-on-one until M.S. finished attending therapy.

97. On or about January 3, 2025, Plaintiff was diagnosed with Bladder Cancer.

98. Bladder Cancer is a serious medical condition that is considered to be a disability under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

99. The major life activities affected by Bladder Cancer include, but are not limited to, bladder function.

100. On or about January 6, 2025, Plaintiff stopped by Basel's office and informed her of his cancer diagnosis.

101. The two discussed Plaintiff's Intermittent Family and Medical Leave Act ("FMLA") leave and ADA accommodation options.

102. Plaintiff told Basel he did not want to disclose the cancer diagnosis to his colleagues or supervisor for fear of it being used against him.

103. Basel ensured confidentiality.

104. On or about January 15, 2025, Plaintiff met with Workman.

105. Plaintiff told Workman he would be having a series of outpatient medical procedures and appointments, but did not disclose his cancer diagnosis.

106. Plaintiff told Workman he would be seeking remote accommodations intermittently over the coming months.

107. Shortly after, Plaintiff called Nicosia over the phone to tell him the same.

108. During a board meeting on or about January 30, 2025, Robertson (female) discussed her response to President Trump's executive orders and her views on leadership.

109. Robertson described a conference with other presidents where another university president challenged presidents to use their positions to clearly state views on right vs wrong.

110. Robertson discussed her "outrage" that a "white male president" could "attempt to shame" other presidents.

111. She stated, "You're a white male president with no vulnerabilities."

112. Roberson reiterated that white men have the least risk to stand up, stating "Identities count at this moment."

113. During a meeting with Workman on or about February 12, 2025, Plaintiff reminded Workman of his upcoming leave for outpatient surgery and that it was scheduled for February 19, 2025.

114. Plaintiff stated his doctor ordered a recovery period on February 20 and 21, 2025.

115. Plaintiff said he would return to work the following week.

116. Plaintiff also told Basel this the same day.

117. Later that day, Basel emailed Plaintiff ADA and/or FMLA medical accommodation forms.

118. On or about February 18, 2025, the day before his surgery, Plaintiff met with Workman and Nicosia.

119. Workman told Plaintiff "This won't come as a surprise to you, but I am sending you back to faculty," or words to that effect; Defendant was removing Plaintiff as Dean of the SBA and sending him back to a Faculty position at the end of the academic school year.

120. When Plaintiff asked why Defendant demoted him, Work responded, "It's time for a change" or words to that effect.

121. On or about February 26, 2025, just days after returning from cancer surgery, Workman met with Plaintiff via Zoom.

122. Workman stated he wanted to share with the whole university that Defendant was removing Plaintiff from his Dean position as soon as possible.

123. Defendant discriminated against Plaintiff due to his sex, race and/or disability in violation of Title VII, the ADA, and the PHRA.

124. Defendant retaliated against Plaintiff for engaging in protected activity under Title VII, Title IX, the ADA, the FMLA and the PHRA.

125. Defendant also interfered with Plaintiff's FMLA leave and failed to accommodate Plaintiff (and/or engage in the interactive process) in violation of the FMLA, the ADA, and the PHRA.

126. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – SEX DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

127. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

128. Plaintiff is a member of protected classes in that he is male.

129. Plaintiff was qualified to perform the job for which he was hired.

130. Plaintiff suffered adverse job actions, including, but not limited to demotion.

131. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

132. Circumstances exist related to the above-cited adverse employment actions that give rise to an inference of discrimination.

133. Defendant discriminated against Plaintiff on the basis of sex.

134. No legitimate, non-discriminatory reasons exist for the above-cited adverse employment actions that Plaintiff suffered.

135. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

136. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – SEX DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

137. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

138. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his sex (male).

139. As a result of Defendant's sex discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RACE DISCRIMINATION
## <u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED</u>

140. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

141. Plaintiff is a member of protected classes in that he is Caucasian.

142. Plaintiff was qualified to perform the job for which he was hired.

143. Plaintiff suffered adverse job actions, including, but not limited to demotion.

144. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

145. Circumstances exist related to the above-cited adverse employment actions that give rise to an inference of discrimination.

146. Defendant discriminated against Plaintiff on the basis of race.

147. No legitimate, non-discriminatory reasons exist for the above-cited adverse employment actions that Plaintiff suffered.

148. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

149. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RACE DISCRIMINATION
## <u>PENNSYLVANIA HUMAN RELATIONS ACT</u>

150. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

151. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his race (Caucasian).

15

152. As a result of Defendant's unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT V – DISABILITY DISCRIMINATION
### <u>AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED</u>

153. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

154. Plaintiff is a "qualified individual with a disability" as that term is define under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

155. Plaintiff was qualified to perform the job.

156. Plaintiff was subject to an adverse employment action, including, but not limited to demotion.

157. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

158. Defendant did not have a legitimate non-discriminatory reason for demoting Plaintiff.

159. Plaintiff's disability motivated Defendant's decision to demote Plaintiff.

160. The purported reason for Defendant's decision is pretextual.

161. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

162. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

163. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.3

164. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT VI – DISABILITY DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

165. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

166. Plaintiff is a "qualified individual with a disability" as that term is define under the PHRA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

167. Plaintiff was qualified to perform the job.

168. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

169. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

170. Defendant did not have a legitimate non-discriminatory reason for demoting Plaintiff.

171. Plaintiff's disabilities motivated Defendant's decision to demote Plaintiff.

172. The purported reason for Defendant's decision is pretextual.

173. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

174. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

175. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VII – RETALIATION
## <u>TITLE VII OF THE CIVIL RIGHTS OF ACT OF 1964, AS AMENDED</u>

176. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

177. Plaintiff engaged in activity protected by Title VII when he engaged in protected activity.

178. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, demotion.

179. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

180. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VIII – RETALIATION
## <u>AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED</u>

181. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

182. Plaintiff engaged in activity protected by the ADA.

183. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but

not limited to, demotion.

184. There exists a causal connection between Plaintiff's participation of the protected

activity and the adverse employment action.

185. Defendant's acts and/or omissions were willful or performed with reckless disregard to

Plaintiff's federal statutorily protected rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra.*

## COUNT IX – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

186. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

187. Plaintiff engaged in activity protected by the PHRA when he engaged in protected

activity.

188. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but

not limited to, demotion.

189. There exists a causal connection between Plaintiff's participation of the protected

activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra.*

## COUNT X – INTERFERRENCE
## FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED

190. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

191. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the

exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C.

2615(a)(1).

192. At all times material, Defendant knew, or should have known, of Plaintiff's need for Intermittent FMLA leave to care for his own serious health condition.

193. Defendant acted in bad faith by interfering with Plaintiff's rights under the FMLA.

194. Defendant knowingly, intentionally, willfully and/or recklessly acted in disregard of the duty to grant Plaintiff's FMLA-related request for leave.

195. Defendant's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

196. As a direct and proximate result of Defendant's unlawful interference with Plaintiff's rights under the FMLA, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to lost wages, pain and suffering, mental anguish, humiliation, loss of fringe benefits, disruption of his personal life and loss of enjoyment of the ordinary pleasures of life.

197. Plaintiff demands judgment in his favor against Defendant for all available equitable relief including, but not limited to: unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

198. Plaintiff further demands judgment in her favor against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under § 2617(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against

Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the Family and Medical Leave Act of 1993.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## COUNT XI – DISCRIMINATION/RETALIATION
## <u>FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED</u>

199. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

200. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

201. At all times material, Defendant knew, or should have known, of Plaintiff's need for Intermittent FMLA Leave to care for his own serious medical condition.

202. Plaintiff gave Defendant sufficient information to allow it to understand that he needed leave for FMLA-qualifying reasons.

203. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke his federally protected rights under the FMLA.

204. As a result of Plaintiff's attempt to invoke his FMLA rights, by requesting and utilizing his FMLA rights, Defendant has retaliated against Plaintiff by demoting him.

205. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

206. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

207. As a direct and proximate result of Defendant's demotion of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary,

loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

208. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

209. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## COUNT XII – RETALIATION
## TITLE IX

210. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

211. Defendant is a recipient of federal financial assistance and is therefore subject to the requirements of Title IX of the Education Amendments of 1972.

212. Title IX prohibits discrimination on the basis of sex in any education program or activity receiving federal financial assistance and prohibits retaliation against anyone who files a compliant of discrimination or participates in any corresponding investigation or

proceeding.

213. Plaintiff engaged in protected activity under Title IX by reporting sex discrimination and participating in a Title IX investigation.

214. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to demotion.

215. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

216. Defendant's retaliatory conduct would dissuade a reasonable person from engaging in protected activity.

217. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer damages.

218. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff, Anthony Wheeler, requests that the Court grant him the following relief against Defendant:

(a)    Compensatory damages;

(b)    Punitive damages;

(c)    Liquidated damages;

(d)    Emotional pain and suffering;

(e)    Reasonable attorneys' fees;

(f)      Recoverable costs;

(g)      Pre and post judgment interest;

(h)      An allowance to compensate for negative tax consequences;

(i)      A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII, the ADA, the FMLA, Title IX and the PHRA.

(j)      Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)      Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)      Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## **JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

## <u>CERTIFICATION</u>

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

**KOLLER LAW, LLC**

Date: May 30, 2025            **By:** */s/ David M. Koller*
                         David M. Koller, Esquire (PA 90119)
                         Jordan D. Santo, Esquire (PA 320573)
                         2043 Locust Street, Suite 1B
                         Philadelphia, PA 19103
                         215-545-8917
                         davidk@kollerlawfirm.com
                         jordans@kollerlawfirm.com

                         *Counsel for Plaintiff*