**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY WHEELER** | : | |
| | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | |
| | : | **NO.   25-2860** |
| **WIDENER UNIVERSITY** | : | |

**MEMORANDUM**

### I.     Introduction

This Court recently has had occasion to opine on the great and needless difficulties created for the parties and the Court when plaintiffs bring a "kitchen sink" complaint.  *Cheryl Pelphrey-Weigand, Plaintiff, V. Resources For Human Development, Inc. D/B/A Montgomery County Recovery Center*, No. 2:24-CV-01325, 2026 WL 267072  (E.D. Pa. Feb. 2, 2026) (Weilheimer, J.). "Kitchen sink" plaintiffs—often found in employment discrimination cases—throw everything they can in a complaint, including the metaphorical kitchen sink, to see what might hold water. Invariably, these kitchen sink complaints include many and varied theories of discrimination, each of which has little to do with the others. *Almost* invariably, this leads to a series of half-baked claims which gum up the works and frustrate the discovery process, distracting the parties by including a litany of non-issues with one-way tickets to dismissal at summary judgment or abandonment before trial.

The First Amended Complaint in the present case (Dkt. #21) in this case fits the bill. The First Amended Complaint was filed at the invitation of the Court who advised Plaintiff's counsel that his initial complaint was factually sparce as to his theories of race and sex discrimination. But

1

Plaintiff has not cured any of the problems the Court discussed with his attorney at the Rule 16 Conference. Plaintiff Anthony Wheeler ("Plaintiff") still brings twelve counts, alleging discrimination related to his usage of leave under the Family and Medical Leave Act ("FMLA"), his disability, his race, and his sex, as well as retaliation counts related to these same theories. Plaintiff's Complaint is devoid of factual allegations sufficient to support his claims for race and sex-based discrimination. Those claims must be dismissed. Plaintiff's claims regarding retaliation. FMLA discrimination and disability discrimination, however, largely survive this motion and will proceed to discovery. The Parties now can focus on the two families of claims with merit and leave the kitchen sink in the kitchen, where it belongs.

## II.    Legal Standard

Under Federal Rule of Civil procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial.  Fed. R. Civ. P. 12(c). The Court will not grant judgment on the pleadings "unless the movant clearly establishes that no material issue of fact remains … and that [they are] entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citation omitted).  The Court may consider not only the pleadings, but also exhibits attached thereto, matters of public record and any undisputedly authentic documents that are attached to the motion if the claims are based on those documents.  *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010).

"In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman v. Corbett,* 873 F.3d 414, 417-18 (3d Cir. 2017). Stated differently, the Court must accept as true all allegations in the

plaintiff's complaint as well as all reasonable inferences that can be drawn therefrom and construe them in the light most favorable to the non-movant. *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018).

### III.    Analysis

#### A. Claims for Sex and Race Discrimination

This Court will first address Plaintiff's claims for race and sex discrimination, which are found in Counts I-IV. "To establish a prima facie case of sex discrimination, plaintiff must show that (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) members of the opposite sex were treated more favorably or the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination." *See Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (cleaned up).

Tellingly, while Plaintiff claims in his Opposition Brief that he has alleged sufficient facts to support these claims, Plaintiff does not provide a *single* pin cite to those purported facts in his First Amended Complaint which support an inference of discrimination or how members of the opposite sex were treated more favorably than him. For that reason alone, this Court could dismiss the sex discrimination counts. *See Wonlah v. Domus, Inc.*, No. 2:24-CV-04725-GAW, 2025 WL 1139268, at *2 (E.D. Pa. Apr. 16, 2025) (Weilheimer, J.) ("Briefs in opposition must contain fully developed legal argument, citation to legal authority, and discussion of the relevant facts" (cleaned up)). Rather, Plaintiff invites this Court to search his Complaint for itself. Without citation, Plaintiff claims that the pleaded facts that show the workplace is "permissive as it related to discriminatory and derogatory remarks based on race or sex" and that "Plaintiff also pleads facts that demonstrate that Defendant treated at least one of Plaintiff's peers more favorably than Plaintiff by allowing this other dean to arrive late or skip meetings without discipline or demotion."

(Dkt. #27-1). Plaintiff's brief asks the Court to combine those allegations with "Robertson's comments[1] and the environment which was clearly permissible in its hostility toward white men in leadership roles" and find that to be sufficient allegations to support a claim. *Id.* It is not.

In the first instance, this Court does not find that any reasonable fact finder could understand President Robertson's remarks as evidencing a culture of discrimination against white people, men, or white men. But even if this Court thought reasonable minds could differ on the understanding of President Robertson's comments, Plaintiff's Complaint alleges that he was demoted by Andrew Workman, Defendant's Provost and makes no allegations at all about President Robertson having a role in his demotion. (Dkt. # 21 at ¶ 116). This Court cannot, as a matter of law, attribute a stray remark by a non-decisionmaker to the decisionmaker as Workman's rationale for demoting Plaintiff. The same applies to Plaintiff's entirely unattributed statement that a former administrator at Defendant including the phrase "white guys like me" and that an unnamed member of "leadership" observed that "the last thing we need at [Defendant] is another white guy making decisions." (*Id.* at ¶¶ 129, 131). Plaintiff cannot survive a motion for judgment on the pleadings based upon random anonymous remarks that had nothing to do with his demotion.

The allegation of better-treated administrators is similarly a red herring. The Complaint does not make any allegations that his firing was pretextually based upon leaving late for meetings or for underperformance of the school. Further, these alleged comparators lack any specific allegations of their roles and by whom they were supervised which would permit the Court to make an inference in his favor. *See Meis v. Aria Health Physician Servs.*, 788 F. Supp. 3d 661, 672 (E.D.

---

[1] This alludes to comments made by Defendant's President in a meeting in which she recounted a conversation about privilege and advocacy, suggesting that white men have a societal responsibility to stand up against discrimination. (Dkt. #21 at ¶¶ 120-131). Specifically, it is alleged that she was "outraged" that another school's "white male president" would attempt to shame another school's presidents, and noted that this other president was a "white male president with no vulnerabilities." (*Id.* at ¶¶122-23). Robertson further expressed her opinion that white men have the "least risk to stand up. . . ." (*Id.* at ¶ 124).

Pa. 2025) (Weilheimer, J.) ("Comparator employees must be comparable in every relevant way.") (*quoting Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011)). A Plaintiff at this stage need not have fleshed out *all* the facts about comparator employees. But the Complaint must make allegations from which this Court can infer that these employees will turn out to be adequate comparators. Those sorts of allegations are sorely lacking. Finally, there are no allegations as to whether Workman was the decisionmaker in the cases of those proffered comparators. For that reason, too, this Court cannot credit Plaintiff's argument regarding comparators.

To survive the pending Motion for Judgment on the Pleadings, the comments and vague allegations of differing treatment that made their way into the Complaint need to create an inference of intentional discrimination with respect to *his adverse employment action*. There must be facts plead which at least permit an inference that these comments are evidence of a discriminatory motive in the mind of Workman in demoting Plaintiff. They do not come close to doing so. The claims for disparate treatment must be dismissed.[2]

### B. Retaliation Claims

Plaintiff's retaliation claims fare a bit better. A claim for retaliation under Title VII and the similar state and local statutes must allege "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.,* 51 F.3d 383, 386 (3d Cir. 1995) (citation omitted). "[T]o demonstrate a causal connection, a plaintiff generally must show either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism,

---

[2]    Finally, it is not lost on this Court that Plaintiff was, in fact, replaced by an Interim Dean who appears to be a white male. This fact was represented to Plaintiff's counsel by Defendant's counsel at the Rule 16 Conference. This Court expects the duty of candor to the Court would lead to Plaintiff at least *acknowledging* this crucial and detrimental fact in his Complaint and pleading an explanation as to why it is not relevant or determinative.

coupled with timing, to establish a causal link*." Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (internal citation omitted). When an employee opposes their employer's activity, that employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006), as amended (Sept. 13, 2006) (*citing Clark County School Dist. v. Breeden*, 532 U.S. 268, 271 (2001)) (holding no reasonable person could have believed a single incident of one off-colored statement violated Title VII). The Complaint makes ample allegations regarding Plaintiff's participation in various investigations which may well be protected activity. Workman is alleged to have made hostile comments about Plaintiff's willingness to advocate for his employees. Those factors together combine to just barely edge these allegations past wild speculation into plausibility. Plaintiff might well have a difficult time proving causation, especially given the time delays between the protected activity and Plaintiff's demotion. But making all reasonable inferences in Plaintiff's favor, this Court cannot say that the retaliation claim should be dismissed.

### C.  Disability Claims

The Court also finds that Plaintiff has plausibly alleged claims regarding disparate treatment under the ADA. Defendant argues that Workman, the decisionmaker, did not have knowledge of Plaintiff's specific disability at the time she fired him. But Defendant cites no law that the decisionmaker must know *exactly* what the disability is, rather than merely know of the existence of a serious health condition which substantially limits a major life activity and which requires accommodation. The Complaint here alleges that he "told Workman he would be having a series of outpatient medical procedures and appointments," and that he "told Workman he would be seeking remote accommodations intermittently over the coming months" prior to his demotion. (Dkt. 21 at ¶¶ 105-06). Those comments at least plausibly made Workman aware that Plaintiff had

a disability. Discovery will show whether those conversations occurred and what Workman gleaned from them. Plaintiff's claim for disparate treatment under the ADA survives.

This Court *does* agree with Defendant that Plaintiff has not adequately pleaded a case for failure to accommodate. There are no allegations by Plaintiff that he requested an accommodation that he did not receive. The closest Plaintiff gets is an allegation that demoting Plaintiff "also constitute[s] a failure to accommodate and a failure to engage in the required interactive process." But that allegation is a summary legal conclusion to be disregarded at this stage in the litigation, not a factual allegation which needs to be credited. Plaintiff's disability claims are dismissed to the extent they argue a failure to accommodate, but otherwise permitted to proceed.

### D.  FMLA Claims

This Court does not need to address Defendant's arguments regarding Plaintiff's FMLA claims. This Court limits briefing to 25 pages. *See* Weilheimer Guidelines at §X(A). No request was made to exceed that limitation. Therefore, this Court will disregard any and all argument found from page 26, forward. That is where the entirety of Defendant's FMLA argument is found, and therefore Defendant's argument regarding Plaintiff's FMLA claim, therefore, is forfeited. Even if this Court were to address the merits, this Court would find that the issue is better left for summary judgment, especially where so many related claims are being permitted to go forward.[3]

### IV.    Conclusion

This Court is quite frustrated by the course of this litigation so far. The claims for race and sex discrimination were plainly insufficient and should not have been submitted to the Court once-

---

[3]    This Court is aware of the legal issue of duplicate claims for FMLA interreference and retaliation, and has granted summary judgment on that basis in a prior case. *See Conklin v. ABEC, Inc*., No. 2:24-CV-00857, 2025 WL 1208904, at *3 (E.D. Pa. Apr. 25, 2025). Had this Court reached Defendant's arguments regarding the FMLA claims, the Court would have found that, here, the factual allegations are sufficient to get past a motion for judgment on the pleadings, if the Court had to rule on it. As it is, Defendant has forfeited its argument for dismissal at this stage.

let alone twice. But the retaliation claims and claims related to the ADA (except those alleging failure to accommodate) and FMLA are sufficiently plead and should be permitted to go forward. This Court has exercised its responsibility here to exclude the "kitchen sink" and ensure the meritorious claims go forward. Counts I through IV are dismissed, without prejudice.[4] The remaining claims can go forward, except to the extent they are claims related failure to accommodate a disability. An appropriate order will follow.

Dated: February 4, 2026                    BY THE COURT:

 

_____

GAIL A. WEILHEIMER        J.

---

[4]     This Court will not grant additional time or specific schedules to amend again. If Plaintiff finds facts which would be sufficient to plead these claims throughout discovery, he should petition this Court for leave to amend at that time.